CLARENCE DELAFIELD, Appellant, v. THE VILLAGE OF WESTFIELD, Respondent.

*Contract — a note at the foot of the specifications forms part of the contract — warranty of the quality of the material to be excavated — when "completed" will be construed to mean "done" or "performed."*

At the end of the specifications for laying a vitrified pipe line there was written the following words: "Note. The vitrified pipe line is mostly, and the tunnels are entirely, to be in soft shale rock." At the time the specifications were circulated to bidders the vitrified pipe line had not been staked out, but at the time the proposal was executed by the person to whom the contract was awarded such line was located, and the contractor relied upon the note at the foot of the specifications in making his estimate. The formal contract made no mention of such note, but the specifications and proposal were therein referred to.

*Held,* that such note was a part of the contract, and that it amounted to a warranty as to the quality of the material to be excavated.

A rational and equitable construction should be given to a contract for the construction of a reservoir and pipe line, with a view to carry out rather than defeat the intentions of the parties thereto, and in aid of such construction the situation and condition of the parties at the time of making the contract should be considered.

The word "completed," as used in a building contract, in reference to the work and the time when estimates were to be made, construed to mean "done" or "performed."

APPEAL by the plaintiff, Clarence Delafield, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Chautauqua on the 29th day of August, 1893, upon the report of a referee.

*William J. Curtis,* for the appellant.

*Frank W. Stevens,* for the respondent.

LEWIS, J. :

In the year 1889 the village of Westfield caused to be prepared plans and specifications for water works for the village. Bids were invited from contractors. The plaintiff, who was a contractor and engineer, submitted a bid or proposal sheet for the work, which was accepted by the defendant, and a written contract based upon the plans and specifications and proposal sheet was entered into between

the parties on the 19th day of July, 1889. The scheme contemplated taking the water from a stream several miles from the village at a point called the in-take. From this point the water was to be first conducted through a vitrified pipe line to a point upon the lands of one Hawley, where were to be constructed a filter and small reservoir, known in the case as the Hawley filter and reservoir. From there a pipe line was to conduct the water to the village, where it was to be distributed through iron mains along the various streets specified in the contract. These mains connected with a large reservoir upon the lands of one Kent, known in the case as the Kent reservoir. A full and particular description of the various parts of the system was contained in the specifications, and particular rules were stated to guide bidders. For the reservoirs excavations and filling bids were required to be made by the solid yard, once measured only in the dykes; for the ditches by the solid yard of excavation only; for the iron and vitrified pipe lines by the running foot. At the end of the specifications was the following: "Note. The vitrified pipe line is mostly and the tunnels are entirely to be in soft shale rock." The plaintiff's proposal sheet was submitted to the defendant in line with the specifications with a few modifications. He bid a lump sum of $1,500 for the Hawley filter and cistern; $100 for the valve house at the main reservoir; for the work upon the Kent reservoir, twenty-one cents .per cubic yard measured in the dyke, modifying, as will be observed, the defendant's specifications, which provided that the filling should be measured once only in the dykes; for the vitrified and iron pipe by the running foot at different prices stated in the bid, and under the head of "Remarks" stated: ". This bid to be considered only as a whole and in no case as a part." "I .... hereby agree to enter into a formal contract with you to furnish such labor and materials, according to the advertisement and specification, within five days after notice is given to me .... that you are willing to accept the proposal in all as called, for in the advertisement." Plaintiff's bid was accepted by the defendant, and a written contract was entered into by the parties on the 1st day of July, 1889, which provided, among other things, that the plaintiff, in consideration of the payments to be made to him by the village, agreed to furnish all the labor and materials and do the work required to complete the work as named in the proposal sheet

annexed, as the same is more fully described in the printed and written specifications hereto annexed; that he would do the work according to the plans and specifications, according to the true intent and meaning of his proposal sheet and such plans and specifications. The contract required the village to appoint a competent person to supervise the work as it progressed; it further provides as follows: " The party of the first part (the village) agrees that their executive committee will cause an estimate to be made before the 10th day of each month of the value of the labor and materials on all work completed up to the first day of the same month, and will, on said tenth day of each month, pay to the party of the second part (the defendant) as a partial payment, ninety per cent of the contract price of such completed work; and will, within twenty days after the completion of the work, cause a final and complete estimate of the labor and materials furnished by the party of the second part under this contract, in accordance with said proposal sheet and specifications, and accepted by the board under this agreement; and will pay to the party of the second part at the ratio named in this proposal sheet, the balance found him due, without undue delay." It further provided that if the plaintiff failed to prosecute the work diligently, and complete the same by the 1st day of December, 1889, to the satisfaction of the village, it was at liberty to suspend the execution of the agreement, and annul the same. The plaintiff made a deposit of $2,000 as security for the performance of the contract. This, the contract provided, should be repaid to him upon the completion of the work. The plaintiff entered upon the work and prosecuted the same till the fore part of December, when the defendant, being dissatisfied with the progress and the manner of performing the work, terminated the contract; and this action was brought by the plaintiff to recover $10,000 damages for breach of the contract. The case was referred to a referee to hear and determine, and he reported in favor of the plaintiff for the amount of the deposit, $2,000, and interest, and an item or two of extra work, amounting in all to the sum of $2,515.70. From the judgment entered this appeal was taken. Whether the conclusions of the referee are to be sustained, depends upon the construction which should be given to the contract. He held that the plaintiff had failed to perform the contract within the time agreed, and to perform the work as agreed, and that

the defendant was, therefore, justified in declaring the contract terminated. Within a few days after making the contract, plaintiff commenced work upon the Kent reservoir. In a few days thereafter he received notice in writing from Kent, the owner of the land on which the reservoir was being constructed, directing him to discontinue work, for the reason stated in the notice that no arrangement had been made for the purchase of the land by the defendant, and threatened to prosecute the plaintiff if he did not desist.. The plaintiff, upon advice of his counsel, ceased work upon the reservoir for something over a month. The village had caused a survey and map to be made of the land of Kent intended to be taken, and had filed the same, pursuant to chapter 211 of the Laws of 1885, and, therefore, had the right to enter upon the land, but this was not known to the plaintiff during the suspension of his work thereon. The lawyer with whom he advised does not seem to have been aware of this act; he had in mind, undoubtedly, as was quite natural he should, the General Condemnation Law; the plaintiff testified that he relied upon the advice of his counsel, and suspended work because of the notice, and his evidence in that particular is not contradicted.

It is also contended by the plaintiff, and the evidence tends to show, that in digging the trenches and tunnels for the vitrified pipe line he encountered a very large amount of hard rock; that the excavations for the tunnels, instead of being entirely in soft shale rock, were largely made up of hard rock which required blasting, and that he was in consequence very greatly delayed in the progress of the work. The learned referee held and decided that the note mentioned at the end of the specifications, that the vitrified pipe line is mostly, and that the tunnels are entirely, to be in soft shale rock, was not a part of the contract for the reason, as stated in his opinion printed in the case, that at the time the plans and specifications were circulated the vitrified pipe line had not been staked out and located, but that at the time the proposal sheet was executed by the plaintiff and delivered to the defendant, the line had been staked out and located so that it could be traced and followed, and that the plaintiff in his proposal sheet offered to do the work in a complete manner according to the specifications, and that the formal contract made no mention of this note at the foot of the

specifications.   There were 1,225 feet of tunnels as estimated in the plaintiff's proposal.   His bid was for the entire vitrified pipe line without extra charge for the tunnelling.   The plans and speci- fications and the proposal bid of the plaintiff are all referred to in the contract and are stated to be annexed thereto ; they were with- out objection received in evidence.   While the exact route of the pipe line had not been located at the time bids were invited, the evidence tends to show that the plaintiff relied in making his bid upon the representation as to the character of the excavations, and assumed that it was as described in the defendant's specifications, and we think it must be held to be a part of the contract, and that it amounted to a warranty on the part of the defendant as to the quality of the excavation.

It is a matter of common knowledge that in making contracts for such work, the character of the material to be excavated is an important factor.

The referee construed that part of the contract requiring the defendant to make an estimate before the tenth day of each month, of the value of the labor and materials on all work completed up to the first day of the same month, to mean, as applied to the pipe line, that before the plaintiff was entitled to an estimate he must have the portion of the work for which he required an estimate entirely completed ; that is to say, he must have dug the trench, laid the pipe, soldered the joints, filled the trench and levelled the ground over the trench, and as to the work upon the Kent reser- voir, that he was not entitled to an estimate until it was entirely completed.

For the work upon the Kent reservoir, as stated, the plaintiff was to receive twenty-one cents per cubic yard for excavating and plac- ing earth in the dyke.

The learned referee finds that the plaintiff commenced work upon the reservoir and put into the embankment or dyke between seven and nine thousand yards of earth, but that at the time he abandoned the work there was left considerable work to be done to complete the same, and that he was not entitled to an estimate upon it for the reason that he had not entirely completed it.

He found as a conclusion of law " that for work and labor done on the vitrified and iron pipe line the plaintiff was not entitled to

an estimate for the value of the work done and the materials furnished and supplied on the first of every month, unless as a matter of fact, the trenches had been dug and the pipe laid therein and covered so as to be in full compliance with the terms of the contract on that subject," and he applied that rule to all the work which had been done when the contract was declared terminated by defendant. A rational and equitable construction should be given to this contract with a view to effectuate rather than defeat the intentions of the parties in making it. It will aid in its construction to consider the situation and condition of the parties at the time the contract was made. The defendant was desirous of obtaining a water system; to that end it was necessary that the party doing the work should be furnished with funds, at stated periods, as the work progressed, in amounts as large as it was safe for the village to advance. It was agreed that monthly estimates should be made, and that the defendant should pay ninety per cent of the value of the labor and materials on all work completed up to the first day of the month. The ten per cent was reserved as a factor of safety to the defendant. The contract contemplated that the village would employ an expert engineer, who should at the beginning of each month make an estimate of the amount of work completed by the plaintiff, and determine the amount which it would be prudent, under the contract, for the village to pay him to aid him in carrying on his work. There was no practical difficulty in the expert engineer estimating the amount the plaintiff was entitled to for the work performed at the close of a month, taking into view the contract price for the work.

It was not absolutely essential that the work should be finished and completed to enable him to make such an estimate. It is suggested by respondent's counsel that there was no basis for such an estimate until the work was completed, as some portions of the line might be more expensive than other parts, and if the engineer was to estimate it in detail it might lead to an over estimate. We are not able to appreciate the force of this suggestion; we must assume that an educated and competent engineer, knowing the amount to be paid for the different parts of the work, would be able to estimate with reasonable accuracy the proportion of the work

done at any stage in its progress.   The plaintiff would not be enti-
tled to an estimate until some material, substantial part of the work
had been performed.   The plaintiff had done a very considerable
amount of labor upon the Kent reservoir ; there was no apparent
difficulty in estimating the amount ; the work upon it extended
over several months, and we are not willing to accept the theory
that the contract contemplated an entire completion of the Kent
reservoir before the contractor was entitled to an estimate ; the par-
ties did not so construe the contract, for in making estimates they
did not measure the length of the pipe which had been laid, and
the work thereon entirely completed, but general estimates were
made of work as it progressed.   While the contract speaks of
an estimate being made upon work completed, we think the parties
used the word " completed " in the sense of work done or performed.
" Completed " is defined by lexicographers as " to consummate, exe-
cute, achieve, realize."   After the October estimate and payment
the plaintiff, needing more money to prosecute the work, applied to
the defendant to advance him the sum of $7,500 as a payment upon
his contract.   He had at the time a large quantity of iron pipe upon
the ground which had not been laid in the trenches ; the defendant
agreed to and did make the advance, and the plaintiff gave to
the defendant a written bill of sale of the pipe in words and figures
following :

" WESTFIELD, N. Y., <i>October</i> 14, 1889.

" In consideration of the board of water commissioners of the vil-
lage of Westfield advancing to me the sum of seven thousand five
hundred dollars over and above the estimate made on the 8th inst.,
I hereby sell, transfer, assign and set over unto the said commis-
sioners all the iron pipe and specials and vitrified pipe and specials
distributed along the line of the proposed water works and at the
railroad station, to belong to and be a part of the system of the
water works property as uncompleted work on my contract with the
said board, which pipe now belongs to me and is free from any other
claim or incumbrance whatever, except as by this instrument."

(Signed by the plaintiff.)

A part of this iron pipe was afterwards laid in trenches by the
plaintiff ; the remainder of it, the referee not finding the precise
amount, was left upon the premises at the time the plaintiff quit the

job, and was thereafter used by the defendant in completing the work.

The referee held that the plaintiff was not entitled to credit for the value of the pipe thus transferred to defendant, or any part thereof, as it was not laid in trenches and covered as required by the contract, so as to become a part of completed work.

The referee found that at the contract price the work which had been completed on the tenth day of December, when plaintiff left the job, amounted to $28,328.85. What it would have been had he given a different construction to the contract does not appear. It would manifestly have been a much larger sum, for the work on the Kent reservoir alone, for which nothing was allowed, amounted at the contract price to from $1,500 to $2,000. Had plaintiff been credited with the value of the pipe sold to the defendant the amount would have been that much larger.

If our views of the construction which should have been given to the contract are correct, it follows that the judgment should be reversed and a new trial granted, with costs to abide the event.

DWIGHT, P. J., and BRADLEY, J., concurred; HAIGHT, J., concurred in the result.

Judgment appealed from reversed and new trial granted, costs to abide the event.