SMITH et al. v. SALT LAKE CITY.

(Circuit Court, D. Utah. November 22, 1897.)

1. MUNICIPAL CORPORATIONS—CONTRACTS FOR PUBLIC WORK—CONSTRUCTION.
   A proposal by a city for bids for the construction of an aqueduct required the work to be done in accordance with plans and specifications on file in the office of the city engineer, among which were a number of "instructions to bidders," one of them stating the approximate quantity of each class of work required, but further stating that such estimate was to be used solely in determining "the comparative value of the respective bids." The contractor, in executing his contract as required by the city, was compelled to construct, of certain classes of the work, a quantity greatly in excess of that given in the estimate. *Held*, that such estimate, being essential to enable bidders to act intelligently in bidding, must be construed as a part of the contract, and that the contractor was entitled to recover the reasonable value of such work done in excess of the amount estimated.

2. SAME—PLANS AND SPECIFICATIONS.
   Where a city invited bids for the construction of an aqueduct, to be built in accordance with plans and specifications on file in the office of the city engineer, a survey and location of the line, being necessary to the making

of such plans and specifications, is presumed to have been previously made in giving a construction to the contract let.

**3. SAME—CHANGE OF CONTRACT BY PAROL.**

The terms of a contract with a city for work, which requires the use by the contractor of a cement equal in quality to the best of a kind specified, cannot be changed by statements made by officers of the city, either before or after the execution of the contract, so as to permit the use of an article in fact inferior to that specified.

**4. SAME—PAYMENT.**

Where a claim for extra work done under a city contract has been referred to the city attorney for adjustment, it is within his power to authorize the payment of a sum allowed by the city council without prejudice to the claimants' right to demand more.

Action by Joseph H. Smith and others against Salt Lake City. Judgment for defendant, and plaintiffs move for a new trial.

John W. Judd and Oscar Reuter, for plaintiffs.
William McKay and D. B. Hempstead, for defendant.

HALLETT, District Judge. In the month of March, 1891, defendant corporation received proposals for building an aqueduct to convey the waters of Parley's creek into the city of Salt Lake. As described in the notice to bidders, the contract was to be let "for all the labor and materials necessary for constructing the concrete and brick aqueduct, 36 inches in diameter, for transporting the waters of Parley's creek into the city, a distance of about 6 miles, work to be fully completed by July 15, 1891, according to the plans and specifications in the office of the city engineer, room No. 17, City Hall Building." The plans mentioned in the notice show three sections of the proposed aqueduct of brick and concrete masonry, two of them showing work at the manholes and one in general plan. There were also on the same sheet two diagrams of bricks to be used in the work. With the plans there was in the office of the city engineer a paper entitled "Instructions to Bidders," which instructions were numbered from 1 to 22, consecutively, and gave a description of the work, with the usual detail. Paragraph 6 gave approximate quantities of earth and other excavation, and the quantities of concrete, brick, and stone masonry, in the usual form.

Plaintiffs' assignors, E. L. De Bois and Joseph Williams, bid for the entire work, but only the work of construction was awarded to them, and the grading and tunneling was let to other parties. A written contract was made and executed between the parties in the usual form. In this contract the different kinds of work were specified, as in the instructions to bidders, and in the proposal of De Bois and Williams, with the price set opposite to each class of work to be done by the contractors. There was no statement in the contract of approximate quantities, as in the instructions to bidders, but the proposal of De Bois and Williams is referred to, which contains the classification of work as given in the instructions and as set out in the contract. De Bois and Williams failed in the work some time after it was begun, and plaintiffs, having become bound for the due performance of the contract, assumed the management of the business and finished the aqueduct. This suit is to recover

83 F.—50

the reasonable value of the work done by the plaintiffs which is alleged to be in excess of the contract, and is usually called "extra work."

The main controversy is over the statement of approximate quantities in the sixth paragraph of the instructions to bidders.   The language of that paragraph, preceding the quantities, is as follows:

"For the purpose of arriving at the comparative value of the respective bids, the following quantities will be taken as approximating the actual quantities which the execution of the work will develop, and shall be used for no other purpose in connection with this contract."

Defendant maintains that the effect of this language is to withdraw the sixth paragraph from the contract, leaving that instrument without any statement of quantities, and binding the contractors to build the aqueduct in any form or place, and with any materials, mentioned in the contract, that might be designated by the city engineer.   The proposition may be differently stated:   That the contract is to be read as providing for the construction of an aqueduct of brick, or concrete masonry, in a trench cut from the surface of the ground, or in one or more tunnels in earth or rock, or on an archway of cut stone, as might be required by the city engineer, without reference to any of the quantities in each class, and for the price stated in the contract for each class.

In any view which may be taken of the contract, this construction seems to be untenable.   The sixth paragraph of the instructions must have been made to enable bidders to understand the work which they were to undertake.   A survey of the line of the proposed aqueduct, and an estimate of quantities, was essential to intelligent action in the premises.   No bid could be made, nor could a contract for the work be made, without such survey and estimate.   The city could have required bidders to make their own survey and estimate of quantities, but that course was not adopted.   In a published notice the city invited proposals for building the aqueduct "according to plans and specifications in the office of the city engineer."   Upon this notice plans and specifications were shown to bidders, and it must be said that any attempt on the part of the city to limit their use is unavailing.   If bound at all, the parties were reciprocally bound in respect to the character of the work as in all other features of the contract.   To eliminate the sixth paragraph on the ground that it was operative only to enable the city to select the lowest bidder would make the contract unilateral throughout.   The contractors would be bound to build any kind of an aqueduct that might be designated by the city engineer, wholly underground, and in tunnels in earth or rock, or upon a stone archway in the style of the Roman Empire, more recently followed in the neighboring state of Mexico.

The principal items in controversy are for cut-stone masonry and rubble masonry, of which only 10 cubic yards of each class, or 30 cubic yards in all, was specified.   According to the report of the city engineer, the cut-stone masonry in the work amounted to 535 cubic yards, and the rubble masonry to 403 cubic yards, or a total of 938 cubic yards.   Plaintiffs' figures are larger, but it will not be necessary at this time to inquire about the discrepancy.

Obviously, there was a nominal specification of stone masonry in the contract, and a very large and substantial construction of stone was required in the work. We cannot say, as defendant says, that plaintiffs were bound by the contract to build of any of the materials mentioned in the contract, and to any extent, regardless of the quantities mentioned in the contract. There was a material departure from the plans and specifications, which resulted in a new and different undertaking, upon which plaintiffs are entitled to recover the value of the work done by them in excess of the contract. Delafield v. Village of Westfield (Sup.) 28 N. Y. Supp. 440, 77 Hun, 124; Cook Co. v. Harms, 108 Ill. 153; Bridge Co. v. McGrath, 134 U. S. 260, 10 Sup. Ct. 730.

Other considerations lead to the same result with equal force and clearness. The greater part of the extra work for which plaintiffs seek to recover was done in Parley's creek cañon, about one mile in length, on that part of the aqueduct which is furthest from the city. A dam and settling basin, which are not mentioned in the contract, were built at the head of the aqueduct. Several stone culverts, one over Parley's creek, and others over gulches, cutting the side of the cañon, were built in this part of the aqueduct. A large part, perhaps all, of the tunnel work of which plaintiffs complain is in the cañon. At the trial a question arose whether the line of the aqueduct in the cañon, as constructed, had been changed after the date of the contract. On this point the oral testimony was highly conflicting. The city engineer and others, perhaps, testified that no survey had been made on the side of the cañon near the aqueduct until after the contract was let. De Bois and others testified that a survey was pointed out to them a little below the line of the aqueduct as built on the side of the cañon, which they examined with a view to make proposals for the work. All agree that a line in the valley of Parley's creek, and near to the stream, intended for a pipe line, if that plan of construction should be adopted, had been located. Why this should have been done before the date of the contract, and the other left undone, is not explained. The pipe line was simple, and that on the side of the cañon encountered nearly all the obstacles of the entire route. If the city desired to inform bidders of facts upon which they could safely and intelligently undertake the work, the survey and location of the line in the cañon was the most important of all.

However, it is not necessary to discuss at length the evidence on this point, because the contract will be found to settle the question. As stated before, the city invited proposals for building the aqueduct according to plans and specifications in the office of the city engineer, and the contract is that the work shall be done in conformity with the plans and specifications. In this a survey and location of the line in all parts is assumed, inasmuch as plans and specifications cannot be made without such survey and location. Upon the contract alone, without referring to the oral testimony, we must assume that the line of the aqueduct on the side of the cañon, as well as that on the other parts of the line, was surveyed and located be-

fore the contract with De Bois and Williams was made.    Delafield v. Village of Westfield (Sup.) 28 N. Y. Supp. 440, 77 Hun, 124; Sexton v. City of Chicago, 107 Ill. 324.

It is not necessary to say that this presumption is conclusive. It is enough to say that it supports the testimony of the bidders that a line was shown them on the side of the cañon somewhat lower than that on which the aqueduct was built, where but little stone or tunnel work was required.    The location of the rejected line seems also to be indicated by the statement of nominal quantities of stone and tunnel work in the approximate quantities.

The referee found that the line of the aqueduct in the cañon had not been located at the date of the contract, but was to be thereafter located, and therefore there was no change of line or in the nature of the work after the contract was made.    In this there was error. Looking to the contract as well as the testimony, the line in the cañon was changed so as to materially increase the nature and amount of work to be done.

All that has been said in respect to stone masonry is applicable to the matter of putting the aqueduct into tunnels.    The quantity specified was small,—in all, 160 yards,—and the work done was greatly in excess of the specification.    No doubt is entertained as to the extraordinary cost of the tunnel work over the trench work. So, also, the stone caps for manholes are clearly outside of the contract.    There was nothing in the plans or specifications or in the contract to show that the manholes were to have any kind of cap other than the brick of which they were built.    Things not mentioned in the contract are not within its terms, and the city could as well demand iron or steel tops for the manholes as to have them cut in stone.

I do not see that the plaintiffs can demand extra pay for laying the aqueduct in deep trenches.    Apparently all kinds of trenches, deep and shallow, are within the terms of the contract, and all should stand on the contract price.    So, also, as to the use of Utah cement, which it is said was allowed for some time under some understanding with the city engineer, and then forbidden on the ground that it was not of good quality.    The contract calls for cement "equal to the best Rosendale," and the declarations of the city engineer or other officer of the city, made before or after the execution of that instrument, cannot be received to change its terms.    If I understood counsel at the hearing, it was not contended that Utah cement was equal to the Rosendale.    But it was in evidence that, at and before the date of the contract, and perhaps afterwards, one or more officers of the city agreed with some one who had an interest in the contract that Utah cement might be used in the work.    And this agreement induced De Bois and Williams to make a lower bid than would otherwise have been made.    In so far as such declarations were made before the contract, they were merged in that instrument, and, if made afterwards, the officers had no authority to change the contract then remaining unexecuted.    The claim for the extra cost of cement was rightly rejected.

All facts appearing in the record have not been reviewed, but enough has been said to explain the principles under which the plaintiffs may be entitled to extra pay for extra work.

An issue joined on a plea of payment is somewhat apart from the general features of the case, and is now to be considered. In support of the plea, and as a part of its case, the defendant put in a receipt given by the plaintiffs' agent for about the sum of $15,000, which appeared to be in full of all demands. It may be conceded that the receipt was in form and effect one which, unexplained, should be regarded as concluding and settling all questions between the parties. No testimony was offered by the plaintiffs to explain the receipt until, in the course of the arguments of counsel before the referee, defendant's counsel called attention to it, and insisted that it was conclusive of all matters in controversy. Thereupon plaintiffs' counsel moved the referee to reopen the case, and hear testimony of the circumstances under which the money was paid and the receipt therefor taken. In support of the motion, affidavits were filed to the effect that in January, 1892, plaintiffs' claim for extra work was by the city council referred to W. C. Hall, then city attorney of Salt Lake City, "for his decision thereon," and that the city council thereafter allowed the sum of $15,000 to plaintiffs on the contract. An agreement between Hall and plaintiffs' attorney is set out in one of the affidavits, as follows:

"That affiant went to the said Hall, and said to him that his clients had preferred their claim before the board of public works, and that they intended to insist on its payment, but that they were desirous of having the amount allowed by the council paid to them, as they needed it to pay off their hands which had been employed, and for material which had been purchased by them for the work, and they did not desire to be prejudiced in any way in the collection of their claim sued on in this cause; that Mr. Hall said to affiant that the matter had been referred to him, and that he was gratified that a brief of authorities had been presented to him, and that he would pass upon it with a view to arrive at exact justice between the parties, and decide accordingly, and that he would advise the city authorities to pay over the amount of money that they allowed to be due; and that the question of the allowance of the claim for extras could be reserved for future consideration."

Further on plaintiffs' counsel stated in his affidavit that he had forgotten the facts during the trial, and thus failed to put in the evidence at the proper time. Quoting from the record, the motion was overruled in the following terms:

"Which motion was then and there opposed by defendant, and to which offer of proof defendant objected, upon the ground that said Hall, as such attorney for the defendant, had no authority to enter into the said agreement offered to be proved, or any other similar agreement, and could not bind the defendant thereby; and thereupon the referee denied said motion, and sustained defendant's said objection to said offer of proof; to which several rulings of the said referee the plaintiffs then and there severally and duly excepted."

Inasmuch as the statement of facts and circumstances attending the making of the receipt was not denied, the defendant denying only the authority of Hall, we must assume that the receipt was given and taken in the manner and under the circumstances set out in the affidavit. So understood, it is clear that the money was not paid in satisfaction of plaintiffs' demand for extra work, and that the receipt was

not intended to be for such demand, and was not so in fact. Whether Hall, as city attorney, had authority to make the agreement set out in the affidavit, or any agreement, relating to the payment, is not a controlling consideration. The intention not to receive the money in satisfaction of the claim for extra work fully appears in the negotiation with Hall, whatever his authority might be, and it was quite as effective as a protest to the auditor at the time of payment would have been. But there is little room for doubt as to Hall's authority in the premises. The claim for extra work had been in his hands for adjustment, and it was known that it was to be the subject of litigation in the courts. As to the method of proceeding towards an adjustment of differences, and whether the plaintiffs could be allowed to take the amount allowed them by the city without prejudice to their demand for greater compensation, was fairly within the discretion of the law officer of the city government. If the city had made the allowance applicable to all demands, and the plaintiffs had notice of the fact, of course the rule would be different. But this has not been suggested. So far as shown, the auditor had no knowledge of the circumstances, and no intention, except to take the usual receipt in the printed form in use in his office. There is nothing in the transaction to indicate that the auditor or plaintiffs' agent at all expected or intended to settle the differences between the parties. It is clear, therefore, that the receipt is not at all conclusive of plaintiffs' right of action.

Upon all that has been said it appears that plaintiffs are entitled to a new trial upon the issues joined, and an order will be entered to that effect. The findings of the referee and the judgment of the court will be vacated, with costs to abide the event of the suit.