CARROLL CONTRACTING COMPANY, Appellant,
v. GILSONITE ROOFING and PAVING COM-
PANY, Respondent.

St. Louis Court of Appeals, February 3, 1903.

1. **Contract: CONSTRUCTION OF CONTRACT.** Where a contract pro-
vides for an excavation, and states that it will be necessary to pile
the same, as there is a stratum of sand having the nature of quick-
sand, and it will be necessary to keep this out to prevent the banks
from caving in, plaintiff is entitled to recover compensation at the
agreed price per cubic foot for all the earth necessarily removed from
the hole in making it of the required size, even if part of the removed
material flowed into the excavation from the sides as the work
progressed.

2. ————: **FINDING OF FACTS: APPEAL: PRACTICE, APPEL-
LATE.** The question being whether material taken from a hole,
which plaintiff contracted to excavate by the cubic yard, ran into it
because of his negligent and improper way of doing his work, so
that he was not entitled to compensation for the extra excavating
necessitated thereby, the finding thereon, on conflicting evidence, can
not be disturbed on appeal.

Appeal from St. Louis City Circuit Court.—*Hon. W. B.
Douglas*, Judge.

AFFIRMED.

*Geo. W. Taussig, H. D. McCorkle* and *P. W. Haber-
man* for plaintiff.

(1) That portion of the specifications under the
heading of "Excavations" is a part of the contract be-
tween appellant and respondent. Iron Co. v. Danforth,
91 N. Y. 153; White v. McClaren, 151 Mass. 553; 1
Lloyd's Law of Building (2 Ed.), sec. 54. (2) The
proper interpretation of the contract is, that the appel-
lant is to be paid $1.07 for each cubic yard necessarily
removed by it, and is not restricted, in its recovery, to

the cubic contents of a hole thirty feet by thirty feet in depth to rock. Clark v. United States, 6 Wall. 543; Ford v. United States, 17 Ct. Cl. 60; Seymour v. Long Dock Co.; 20 N. J. Eq. 396. (3) The statement in the specifications, that "immediately on the surface of the rock there is a strata of sand which, according to borings, has the nature of quicksand," is vague, uncertain, indefinite, doubtful and ambiguous, and therefore the court erred in excluding the oral testimony, offered by appellant, as to the circumstances surrounding the execution of the instrument and the construction put upon it by the parties themselves. St. Louis Gaslight Co. v. City, 46 Mo. 121; Sedalia Brewing Co. v. Sedalia Waterworks Co., 34 Mo. App. 49; Beach on Contracts (1 Ed.), sec. 721, and notes.

*Kehr & Tittmann* for respondent.

(1) This is an action at law in which the court, at the request of the defendant, made a special finding of facts under the statute. R. S. 1899, sec. 695. Plaintiff did not except to the court's conclusions of fact and the facts so found are therefore conclusively determined. Hence, there is nothing open to review except the single question whether the facts as found sustain the judgment which was rendered. Leavitt v. Taylor, 163 Mo. 158; Hughes v. Ewing, 162 Mo. 261; Loewen v. Forsee, 137 Mo. 38; Nackey v. Mayes, 73 Mo. App. 495; Freeman v. Hemenway, 75 Mo. App. 617. (2) "It is a well-settled rule of law that if a party, by his contract, charges himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties, however great, will not excuse him." Dermott v. Jones, 69 U. S. 1; School Trustees v. Bennett, 27 N. J. L. 517; Harrison v. Railroad Co., 74 Mo. 370. (3) Plaintiff can only sue on *quantum meruit* if it appears that it has fully per-

formed the contract so that nothing remains to be done except to pay the contract price. Barnett v. Sweringen, 77 Mo. App. 71. The contract when developed on trial will control and limit the amount and character of recovery. Plummer v. Trost, 81 Mo. 524.

GOODE, J.—Most of the important facts of this controversy will be found in the following findings by the circuit court:

"Defendant has requested a special finding of facts in this cause. The court, therefore, under section 695, Revised Statutes 1899, states in writing its conclusions of fact from the evidence in the cause as follows:

"The St. Louis Transit Company, intending to erect a smokestack on Second and Salisbury streets in St. Louis, to be used as part of its powerhouse, near that point, caused a plan and specifications of the proposed work to be prepared. The smokestack was to be fifteen feet in diameter at the base and to be 192 feet high. It was to be riveted to and rest on a solid block of concrete 30' x 30' square carried down to rock. This involved the making of an excavation to rock to receive the concrete. Messrs. W. D. Boyce & Company were the engineers of the Transit Company, and prepared the plans and specifications, and were to superintend the work.

"The defendant is a business corporation engaged in doing concrete work, and the plaintiff is a like corporation engaged in doing excavating. Defendant was desirous of bidding on the concrete work required by the Transit Company, but in order to get it, it was also required to take the excavating, but as that was not in its line of business, it invited bids from others for doing that part of the work. Plaintiff's attention being brought to the subject, a conversation between Mr. Carroll, its president, and Mr. Paul Fenske, the superintendent of the defendant, followed, in which Mr. Carroll was told to go to the office of Boyce & Company and

examine the specifications and give the Gilsonite company a bid on the work of excavation. He was told that the Gilsonite company would base its bid to the Transit Company on his bid for the excavation.

"The Transit Company had some time before erected a similar smokestack at its powerhouse on Vandeventer avenue, the concrete work of which had been done by the Gilsonite company and the excavation by the Carroll company.

"Mr. Carroll examined the specifications and thereupon submitted to the Gilsonite company the following proposal, which the latter accepted, namely:

"St. Louis, Mo., Dec. 27, 1899.
"Gilsonite Roofing & Paving Co., City.

"Gentlemen: We hereby agree to do the necessary excavating of a hole 30x30 feet by depth to rock, for a chimney foundation at the power station of the St. Louis Transit Company, Broadway and Salisbury street, according to plans and specifications prepared by Messrs. W. D. Boyce & Co., engineers and superintendents, under the heading of 'Excavation,' at the rate of one dollar and seven cents per cubic yard. The hole to be turned over to you ready for concrete.

"Respectfully,

CARROLL CONTRACTING COMPANY.
"By James Carroll,
"Prest. and Treas.
"Accepted: January 11, 1900.
"Gilsonite Roofing & Paving Company.
"By P. B. Fenske."

The specifications referred to above are as follows:

"'Excavation: The excavations for the foundation to be thirty feet square and approximately thirty feet deep from the present grade at power station site. The excavations are to extend to the solid rock, which is approximately between thirty feet and thirty-five feet below the grade line.

" 'When rock is reached, all shale or rotten stone shall be taken out, leaving a perfectly clean and smooth surface to receive the concrete.

" 'This excavation must be thoroughly braced throughout, so as to insure no caving in of any of its walls. It will be found necessary to either use piling in making these excavations, or a crib, sinking same down as the excavation proceeds, as immediately on the surface of the rock there is a strata of sand, which according to borings, has the nature of quicksand. And it will be necessary to keep this dammed out in order to prevent the banks from caving in, and also to be able to put in the concrete.

" 'If a crib is used, same must be made thirty feet square on the inside, thus insuring the full size of the foundation as shown. In case sheet piling is used, the same dimensions must be adhered to.

" 'The excavation must at all times be kept clear of water, which will probably be found in some quantity, and the walls of the excavation must be thoroughly braced on account of the close proximity to the railroad.

" 'All earth excavated for this foundation must be removed from the premises.'

"And the court finds that the proposal, acceptance and specifications aforesaid constitute the contract between the plaintiff and defendant, and further finds that all work done by the plaintiff and sued for in this action was done under said contract.

"The court further finds that plaintiff's work, in the effort to carry out the contract, was not satisfactory in its rate of progress or its quality, either to Messrs. W. D. Boyce & Company, or to the defendant Gilsonite company, and plaintiff was repeatedly warned and cautioned that the work would be taken out of its hands as well as out of the hands of defendant, unless speedily brought to completion according to the terms of the contract; and thereupon plaintiff requested defendant to do, and the defendant, at plaintiff's instance, did the

work, furnished the materials and advanced the money set forth in its counterclaim herein, except the twenty-five dollars paid to 'Mercereau for expert services,' amounting in the aggregate to ten hundred and eighty-eight and 94-100 dollars ($1,088.94) ; and the court finds that the plaintiff did complete its contract by the aid of the defendant, as aforesaid.

"And the court further finds that the depth to rock of the excavation proved to be thirty-four feet one inch; that the hole therefore which plaintiff agreed to excavate and turn over to the defendant ready for concrete is a hole thirty by thirty by thirty-four feet one inch, the contents of which are 1,136 cubic yards. And the court finds that under the contract and the evidence plaintiff is to be paid for 1,136 cubic yards of excavation at the price of $1.07 per cubic yard, amounting to $1,215.52, on account of which it has received from the defendant the sum of $700, leaving a balance of $512.52.

"And the court finds that the plaintiff is indebted to the defendant on the latter's counterclaim in the sum of $1,113.94, deducting from which the $512.52 due plaintiff on its cause of action, leaves the plaintiff indebted to the defendant in the sum of $573.42 for which defendant is entitled to judgment against the plaintiff.

"WALTER B. DOUGLAS, Judge."

The opinion of the circuit court was embodied by the plaintiff in the bill of exceptions and is discussed in the briefs, so it will be copied:

"This is an action to recover the balance of the agreed price for work and labor done under a contract.

"The petition is based upon one interpretation of the contract and the answer upon another.

"The work to be done was the excavation of a chimney foundation, the size of which was fixed, but the exact depth of which was indeterminate until the practical completion of the work.

"The plaintiff was to do 'the necessary excavating' for which he was to be paid $1.07 per cubic yard of earth

removed. The specifications, which were a part of the contract, showed that quicksand would probably be found in the course of the excavation.

"The fair construction of the contract is that the plaintiff was to be paid the agreed price for whatever earth it was 'necessary to remove in order to complete the excavation. That is to say, that it was not the cubic contents of a measure of the size of the hole that was to determine the plaintiff's recovery but the amount of earth shown to have been actually removed by the plaintiff in the performance of the contract according to its terms; or, the amount which it would have been necessary to have removed had the work been done in accordance with the contract.

"While the plaintiff succeeded in finishing the work, it was not done in the manner required by the contract.

"The sheet piling used was not such as kept the quicksand dammed out. The excavation was not kept clear of water.

"The walls were not thoroughly braced, and in consequence they caved in.

"The testimony as to the amount of earth removed was given by Mr. Carroll, the president of plaintiff as follows:

"'3820, as near as I could get at it, was the number of cubic yards that we removed.'

"How much of this was earth that had caved in can not be determined.

"How much of this was earth or sand which needed to be removed because of the insufficient sheet piling can not be determined.

"How much the quantity removed was increased by the water of which the excavation was not kept clear can not be determined.

"Yet the plaintiff has no right to recover for the removal of earth which caved into the excavation, or for sand which flowed in because of the insufficiency of the

sheet piling, or for increase in quantity by reason of the water.

"The evidence of the amount removed covers all of these and no method is afforded by which the 'necessary excavation' can be arrived at, other than by taking what would be the cubic contents of the completed excavation. That, no doubt, gives too small a quantity, but since no other measure is given that must be used.

"Eleven hundred and thirty-six cubic yards at $1.07 per cubic yard, gives $1,215.52, and for this amount, less $700, heretofore received by it on account, plaintiff is entitled to judgment.

"As to the counterclaim, the amounts are admitted to be proper, and the evidence shows that the plaintiff is chargeable therewith as work and labor done and money advanced by defendant at plaintiff's request, express or implied, excepting one item: $25 paid 'Mercereau for expert service.' As to this there is no evidence that it was paid at plaintiff's request and it is disallowed. For the remainder of the counterclaim, $1,088.94, the defendant will have judgment.

"Setting one judgment off against the other there remains due to the defendant $573.42, for which and for costs it will have execution.

"There is considerable evidence regarding the difference between the amount of quicksand found by plaintiff in excavating and the statement of what would likely be found, made in the specifications and by the engineers. Under the pleadings, however, this evidence is wholly irrelevant and it should have been excluded. It has not been considered in the decision of the case."

The real dispute between the parties arose out of the fact that in making the agreed excavation, plaintiff struck a layer of quicksand about eighteen feet below the surface and extending thence to the rock sixteen feet below. Plaintiff's president testified the representation was made to him by the defendant's superintendent that the quicksand was only about four feet thick above the

surface of the rock to which the hole was to be put down and that plaintiff took the contract and started to work with that understanding; that in consequence of the sand being so much thicker and heavier than was expected and running into the excavation, the amount of cubic feet of material taken out was much in excess of the capacity of the pit itself, amounting to 3824 cubic yards, for which defendant under the contract became indebted to plaintiff for more than four thousand dollars.

The testimony showed that when the quicksand was reached, the plaintiff drove down sheet piling at the sides of the excavation to retain it; but that plan was a failure for the sand would flow under the piling and into the hole, whence it had to be taken out.

There was testimony that plaintiff's president was advised to put down a crib or box to resist the sand's pressure, but he insisted on trying the piling; further that the piling was poorly braced, whereas, if the right precautions had been taken, the sand would not have escaped into the pit.

The petition stated the contract and prayed for the cost of taking out all the material removed in the course of the work, or, as said, more than four thousand dollars, less certain payments plaintiff had received.

The answer admitted the contract between the parties, set out part of the specifications in the contract between the Transit Company and the defendant for the chimney; averred the work was to be done under the superintendency of W. D. Boyce & Co., the Transit Company's engineers; that plaintiff contracted to complete the work of excavating a pit of the dimensions stated in the contract but alleged it failed to complete its contract and that the Transit Company's engineers repeatedly notified the defendant the work was not progressing satisfactorily or according to contract; that afterwards, plaintiff, conceding its inability to complete the work, requested defendant to furnish the labor and

material to complete it, and defendant in response to plaintiff's request, did furnish labor and material costing over eleven hundred dollars, for which sum defendant prayed judgment by way of counterclaim.

At the instance of plaintiff the court declared the law to be that if the money expended by the defendant in the excavation was for work not covered by the plaintiff's demand and was contributed voluntarily by the defendant and not at the request of the plaintiff, defendant could not recover the money so expended. Further, that if the words of the written contract between the parties were of doubtful or uncertain meaning, resort might be had to the circumstances and conditions surrounding the contract to interpret them.

At the instance of the defendant the court declared the plaintiff could not recover unless it had finished the work the contract required it to do; further, that if plaintiff requested defendant to assist in doing part of the work covered by the contract and defendant, at plaintiff's request, did work and furnished material or laid out money in completing the excavation, then plaintiff was liable to the defendant for the reasonable value of the work and material or the money so advanced.

The court also gave this instruction of its own motion:

"If the court finds that the plaintiff entered into the contract in writing, recited in the answer and given in evidence, and that the work sued for by plaintiff is work done by it in making or attempting to make the excavation referred to in said contract, then plaintiff can not recover for the work so done more than the cost at one dollar and seven cents per cubic yard of the contents of a hole thirty feet by thirty-four feet and one inch, to-wit, 1,136 cubic yards for the reason that the evidence does not show what greater quantity was 'necessary excavating.' "

As will be seen from the statement, the parties to this action interpret the written contract differently,

the defendant insisting that under it the plaintiff could only recover for excavating earth sufficient to fill a hole thirty feet square of whatever depth there was between the surface and a rock bottom; but the plaintiff's interpretation is that it is entitled to recover compensation for all the earth necessarily removed from the hole in making it of the required size, even if part of the removed material flowed into the excavation from the sides as the work progressed. The declaration of law given by the trial court of its own motion, and the opinion delivered in rendering judgment, show it adopted the plaintiff's theory instead of the defendant's and that plaintiff lost because the court found the facts against it; that is, the court found that only 1136 cubic yards of earth were necessarily excavated. We think the construction put on the contract was correct. Clark v. United States, 6 Wall. 543; Ford v. United States, 17 Ct. Cl. 60; Seymour v. Long Dock Co., 20 N. J. Eq. 396; Dalafield v. Village of Westfield, 77 Hun 124. But if it was not, it was an advantageous one for the plaintiff.

The circuit court must have found, and its opinion states it did find, that much of the rest of the material taken out of the hole by the plaintiff ran into it on account of the negligent and improper way in which the plaintiff performed the work. Whether or not the surplus excavation was rendered necessary by the plaintiff's unskillful mode of guarding against the inflow of the quicksand, or by the condition of the soil, was a pure question of fact, the evidence regarding which was contradictory and the court's finding can not be set aside or disregarded by us.

Another issue was whether defendant undertook to complete the job of its own volition or did it at the request of plaintiff to relieve the latter from further responsibility. The circuit court's finding as to that issue is supported by the testimony.

Appellant complains of the exclusion of much testimony said to be competent, concerning the quantity of quicksand the plaintiff agreed to remove, in conversations between its president and the defendant's manager Fenske. As the court found part of the material which ran into the pit during the digging did so on account of plaintiff's negligence, and that there was no way of ascertaining what quantity flowed in independently of plaintiff's fault, the exclusion of the above testimony could not have prejudiced the plaintiff. The essential fact found by the trial court was that plaintiff only proved it necessarily excavated 1135 cubic yards of material and, as the burden was on it to show the extent of the necessary excavation, a recovery for more than that quantity would have been unwarranted, whether plaintiff agreed to handle only four feet of quicksand or whatever was encountered.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.