GARDNER, *Appellant*, v. ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY.

### Division Two, June 16, 1896.

1. **Practice:** WITNESS, IMPEACHMENT OF: MISDEMEANOR. Evidence that a witness has been convicted of a misdemeanor is not competent to impeach him.

2. ———: ———: ———: WAIVER. Error in the admission of evidence showing the conviction of a witness for plaintiff of a misdemeanor, is not waived by defendant's introducing like evidence as to one of defendant's witnesses.

3. ———: ———: ———: NONREVERSIBLE ERROR. Nor will error in the admission of such evidence require the reversal of the judgment, where it appears that it did not materially affect the merits of the action, and that the judgment was for the right party.

4. **Railroad:** NEGLIGENCE: INJURY TO EMPLOYEE: INSTRUCTIONS. In an action against a railroad by a locomotive fireman, injured in its service by the separation of the locomotive and tender, the kingbolt which fastened the couplings between them having broken, and the safety chains having parted, there was no error in refusing to submit to the jury the question of the sufficiency of the safety chains, it appearing that they were not intended to hold the engine and tender together.

5. ———: APPLIANCES: EMPLOYEES. A railroad company is not required to furnish for the use of its employees, cars, tenders, and appliances which are absolutely safe, or of the most approved pattern; its duty is to furnish only such as are reasonably safe.

*Appeal from Lawrence Circuit Court.*—HENRY BRUM-BACK, ESQ., Special Judge.

AFFIRMED.

*John W. Leake, Cloud & Davies, Joseph French,* and *W. B. Skinner* for appellant.

(1)   There was evidence tending to show that the insufficiency of the safety chains contributed to the accident, and that the purpose of said chains, in part, was to hold the engine and tender together in case of the breaking of the drawbar or kingbolt.   And the question of the sufficiency of the safety chains should have been submitted to the jury, and the instruction asked by plaintiff covering that point should have been given, and that given by the court of its own motion did not present all the issues.   It is well settled law, that instructions should be predicated on the whole testimony, and when they have a tendency to restrict the jury to isolated facts, to the exclusion of other facts which are before them in evidence, it is not only a misdirection, but an infringement on the province of the triers of the fact.   *Chappell v. Allen,* 38 Mo. 213; *Raysdon v. Triumbo,* 52 Mo. 35; *Compton v. Baker,* 34 Mo. App. 133.   (2) The admission in evidence of the book purporting to be the mayor's docket from Garfield, was clearly error.   The same was not properly authenticated, and if it had been, was not competent or proper to discredit the witness by evidence of violation of city ordinances, or of convictions for misdemeanors.   *State v. Taylor,* 98 Mo. 240.   (3) The testimony introduced by defendant to show how plaintiff's witnesses, Ford, Blancet, and Baxler, were registered at the Hotel Porter, under fictitious names, by Mr. Leake, one of the attorneys, was clearly irrelevant and immaterial, and the refusal of the court to permit Mr. Leake to explain this circumstance, was also error.   (4) The testimony offered by plaintiff, tending to prove, for the purpose of showing knowledge on the part of defendant, of the

dangerous character of the machinery, that the use of
the Consolidated engine had been abandoned by the
defendant on that part of the road, and that they were
not then in general use, should have been admitted.
*Crane v. Railroad*, 87 Mo. 588. (5) Under the issues
made in this case, not only specific defects of this par-
ticular engine complained of, was in issue, but the gen-
eral defects of consolidated engines as a class, was also
put in issue, and some testimony was admitted on this
point. It was competent to have admitted testimony
tending to prove that these general defects existed, and
that defendant knew it, yet the court excluded all evi-
dence of other engines of a different construction, used
by defendant, in which such defects did not exist, and
comparison therewith. This, too, after it had been
proved by defendant's own witnesses that this engine
had been constructed for defendant on a special order
for such engines. Comparisons with other engines
should have been permitted. *Huhn v. Railroad*, 92 Mo.
448; 1 Thompson on Neg., pp. 152–156; *Spaulding v.
Railroad*, 30 Wis. 110; *Railroad v. Pindar*, 53 Ill. 447;
*Turnpike Co. v. Railroad*, 54 Pa. St. 345; *Anderson v.
Co.*, 64 N. C. 399; *Railroad v. Gilham*, 39 Ill. 445;
*Longabaugh v. Railroad*, 9 Nev. 271; *Bevier v. Railroad*,
13 Hun, 254; *Hoyt v. Jeffers*, 30 Mich. 181; *Railroad v.
Corn*, 71 Ill. 493.

*L. F. Parker* for respondent.

(1) The court permitted no reversible error in
permitting the docket of the justice of the peace to be
read to the jury; and if the admission of that testimony
was error, it was waived by the plaintiff by introducing
evidence of like character with reference to a witness
for the defendant. *Nitchie v. Earle*, 19 N. E. Rep. 749;
*Perkins v. Hayward*, 24 N. E. Rep. 1033; *State v.*

*O'Brien*, 46 N. W. Rep. 861; *Reed v. New*, 12 Pac. Rep. 139; *Minton v. Lumber Co.*, 48 N. W. Rep. 857; *Railroad v. Wiebe*, 41 N. W. Rep. 297; *Howell v. Graff*, 41 N. W. Rep. 142. (2) The first instruction asked by the plaintiff was faulty, in that it ignored the question of reasonable care on the part of the defendant, as the measure of its duty, and an instruction with reference to the duty of the master to a servant, in respect of furnishing machinery and appliances, is faulty unless it includes the question of reasonable care as a measure of that duty. *Railroad v. Javi*, 3 C. C. A. Rep. 443; *Gowen v. Harley*, 6 C. C. A. Rep. 197; *Railroad v. Linney*, 7 C. C. A. Rep. 656. (3) These same authorities sustain the position taken by the court below, as shown by the modification of plaintiff's instruction, and the giving of the instruction by the court of its own motion.

BURGESS, J.—Action instituted in the circuit court of Barry county, for damages for personal injuries sustained by plaintiff, while in the employ of defendant in the capacity of fireman on one of its locomotives on its railroad. The venue was changed to the circuit court of Lawrence county, where a trial was had resulting in a verdict and judgment for defendant, and plaintiff appealed.

At the time of the accident plaintiff was standing upon the apron which covered the opening between the engine and tender, attending to his duties; they separated and he fell beneath the tender, which passed partially over him, bruising and injuring him on and about the head, body, shoulders, spine, and loins, permanently disabling him, and rendering him unable to work.

With respect to the negligence of defendant the petition alleges, "that said injuries were caused by the carelessness and negligence of defendant company, its

agents and servants, in failing and neglecting to keep its roadbed properly ballasted, tied, lined, and leveled, and by allowing and permitting the ends of the rails on said railway where the same connected to get out of level, by reason of which at the point of connection one rail would stand several inches higher than the other, thereby jolting and jerking the engines and trains moving on said road when they would strike said joint so elevated above the level of the connecting rail and tearing the coupling, which united said cars, apart. And also by the negligence and carelessness of the defendant company, its agents and servants, in using insufficient safety chains and eye bolts to connect said chains to engine and tender and insufficient draw-bar and kingbolts to connect said engine, upon which plaintiff was firing, with the tender thereof, which drawbolt had upon the kingbolts passing through the same too much play by several inches, thereby weakening said kingbolts and coupling and making it more liable to break."

The answer was a general denial.

The separation of the tender from the engine was caused by the breaking in two of the kingbolt, which fastened the coupling between them. The evidence was conflicting as to whether this bolt was cracked before the accident, and by reason thereof defective, or whether it was in perfect condition. The evidence was also conflicting as to the condition of the track at the place of the accident, plaintiff's witnesses testifying that it was in very bad condition, while defendant's witnesses testified to the contrary. The safety chains also parted and there was some evidence tending to show that they were insufficient.

Plaintiff asked the court to instruct the jury as follows:

"It was the duty of the defendant to furnish and

supply to its employees, or those engaged in running and operating its train of cars, machinery and appliances, such as locomotive engines and tenders, and the various appliances thereto belonging, that were reasonably safe, secure and sufficient for the transaction of its business, and that it was the duty of defendant to keep its track in a reasonably safe condition for the passage of its trains, at the point where the accident in evidence occurred, and in the absence of notice to the contrary, the employees of defendant had the right to assume that the locomotive engines and tenders and appliances furnished to them with which to work were so safe, secure and sufficient and that said track was in a reasonably safe condition.

"If you find, therefore, that defendant neglected its duty as above defined, and that on the day specified in the petition plaintiff, Robert A. Gardner, was in the employ of defendant as a fireman, and was at said time engaged in the prudent and careful discharge of his duties under such employment, and that there was a defective or insufficient or cracked coupling pin or kingbolt in the engine through the drawbar connecting the engine and tender on which he was working, or that the drawbar or safety chains or coupling apparatus of said engine and tender were defective or insufficient and not reasonably safe, or if the track at the point where the accident occurred was not in a reasonably safe condition, or if the track was so rough or the joints so uneven or the ties broken or rotten or the track was swinging so as to render the same not reasonably safe, and that the defendant knew, or by the exercise of ordinary care and diligence, might have known of such defects, and by reason or in consequence of such defective or insufficient kingbolt or coupling pin, or insufficient drawbar, safety chains or coupling apparatus, or by reason or in consequence

of such defective, rough or uneven track, said engine and tender separated, and plaintiff, while engaged in the prudent and careful discharge of his duty, was thrown or fell from said engine and tender and was run over and injured by said tender, then the verdict of the jury must be for the plaintiff."

This instruction was refused, and instead thereof the court gave the following instructions:

"It was the duty of defendant to furnish and supply to its employees, or those engaged in running and operating its trains of cars, machinery and appliances such as locomotive engines and tenders and the various appliances thereto belonging, that were reasonably safe, secure and sufficient for the transaction of its business (so far as the same could be secured by the exercise of reasonable care and diligence), and that it was the duty of defendant to keep its track in a reasonably safe condition for the passage of its engines and trains at the point where the accident in evidence occurred; and, in the absence of evidence to the contrary, the employees of defendant had a right to presume that the locomotive engines, and tenders, and appliances furnished to them with which to work, were reasonably safe, secure and sufficient, and that said track was in a reasonably safe condition.

"The court instructs you, that if you believe from the evidence that the plaintiff was in the employ of the defendant as fireman on one of her trains, and that such train broke apart by the breaking of the 'kingbolt,' and defendant was thrown from such train and run over by the tender and injured thereby, and that there was a crack or fracture in such kingbolt, and that the same was rendered unsafe and insufficient thereby, and that such unsafe and insufficient condition of the kingbolt could have been discovered by the defendant by the exercise of reasonable care and diligence, and that such

breaking apart of the train was caused by such insufficiency of the kingbolt; or, if you believe from the evidence that the track of the defendant at the point where the accident occurred was in an unsafe condition at that time, and that such breaking of the kingbolt was caused by such unsafe condition of the track, then your verdict should be for the plaintiff.''

On the trial Asa Baxler testified as a witness on behalf of plaintiff, and for the purpose of discrediting him, defendant was permitted, over the objection of plaintiff, to introduce in evidence the docket of the mayor of the city of Garfield, Arkansas, showing that said witness had been fined in August, 1890, for disturbing the peace, and again, in 1893, for some other misdemeanor. It is insisted that this evidence was incompetent for the purpose of impeachment, the offense not being infamous, and that the court committed error in admitting it.

It has been uniformly held by this court that such evidence is not permissible for the purpose of impeachment. The conviction of a penal offense not infamous, is not inconsistent with that of good character for truth and veracity, while conviction of an infamous crime tends to show a bad general moral character.

In *State v. Smith*, 125 Mo. 2, it was said: ''At common law a witness was incapacitated by conviction of an infamous crime. His competency was not affected by conviction of a mere misdemeanor. With us the conviction of a felony affects his credibility, but does not render him incompetent as a witness, but conviction of a mere assault and battery is not admissible to impeach a witness. It does not affect his general moral character.'' The same question was again before this court in *State v. Donnelly*, 130 Mo. 642, and it was then held that such evidence was not permissible for the

purpose of impeaching a witness.   See, also, *State v. Taylor*, 98 Mo. 240; *State v. Warren*, 57 Mo. App. 502.

But defendant contends that, even if the court erred in admitting the mayor's docket showing the conviction of Baxler of a misdemeanor, the error was waived by the introduction by plaintiff of evidence of like character with reference to a witness of defendant.

Whatever the rulings may have been elsewhere with regard to this matter, we must say that we are not impressed with the logic of such a doctrine.   We are unwilling to say that one error may be offset against, waived or justified by, another, although they both be of the same character.   It seems illogical to say that one error is waived by the commission of another, where timely objection is made and exception duly saved.   That an error of such a character may be waived by failure to make timely objection, and to save the exception if the objection be overruled there is no question, but it is not waived by the commission of another error of like or any other kind.   "The rule of general average does not obtain in such matters." *Redman v. Peirsol*, 39 Mo. App. 173.

Plaintiff contends that there was evidence tending to show that the insufficiency of the safety chains contributed to the accident, and that the purpose of said chains, in part, was to hold the engine and tender together in case the drawbar or kingbolt should break, and that the question of the sufficiency of said safety chains should have been submitted to the jury, and the instruction asked by plaintiff covering that point should have been given, and that given by the court of its own motion eliminating that question from the consideration of the jury refused.

There was no material difference between the instruction asked by plaintiff and refused by the court, and that given by the court of its own motion, with

respect to the defendant's duty to its employees in furnishing machinery and appliances for their use in and about their work, and the condition in which its track was required to be kept over which they were necessarily compelled to travel. The jury were told by both instructions, that it was defendant's duty to keep its track in reasonably safe repair and to furnish its employees with reasonably safe machinery and appliances. The only real difference was, that by the refused instruction the question as to the insufficiency of the safety chains was submitted to the jury, while by the instruction given that question was ignored.

It may be conceded that instructions should be predicated upon all the testimony bearing upon the issues involved in the case on trial, upon which there could be a recovery, but if there be an issue, among others, and the evidence with respect thereto be inconsistent with the physical facts in the case, as in the case at bar where the breaking of the safety chains could have had no possible connection with the injury to plaintiff, no error is committed by eliminating such an issue from the case, or in ignoring it in the instructions.

The evidence clearly showed that the safety chains were not for the purpose of holding the engine and tender together, but in case there be a defect in the drawbar, the chains when properly handled by the engineer may be used to haul the tender, or if the tank is derailed they hold the tender in line and prevent the trucks from running crossways or off to one side; that they are used as a precaution to prevent the tender from leaving the rails and shooting off to one side.

There was no error, we think, in omitting that issue from the instruction.

The questions as to the condition of the track, and the kingbolt were submitted to the jury.

While it was the duty of defendant to keep and maintain its roadway, cars, and tenders in a reasonably safe condition, and to furnish its employees reasonably safe machinery and appliances with which to work, it was not an insurer of plaintiff's safety, nor was it required to furnish cars, tenders, or appliances which were absolutely safe, or of the most approved kind; it discharged its duty to its servants when it employed such as were reasonably safe. These questions were submitted to the jury under instructions which seem to be fair to both parties and free from objection.

Under these circumstances should the judgment be reversed and the cause remanded for further trial because of the error of the court in admitting in evidence the mayor's docket, showing that plaintiff's witness, Asa Baxler, had been convicted and fined for violating the city ordinances of Garfield City, Arkansas? The judgment was manifestly for the right party, and where such is the case the judgment will not be reversed because some incompetent testimony was admitted. *Sebree v. Patterson*, 92 Mo. 451; *Deal v. Cooper*, 94 Mo. 62. Moreover, we do not think that the admission of this evidence materially affected the merits of the action, and under such circumstances, section 2303, Revised Statutes, 1889, prohibits us from reversing the judgment.

This seems to have been one of those unfortunate accidents where no one was to blame, without culpable negligence on the part of the master, and for which the law furnishes no relief.

Finding no reversible error in the record, the judgment is affirmed. GANTT, P. J., and SHERWOOD, J., concur.