Williams, Judge,
delivered the opinion of the court:
The plaintiff and the defendant entered into a contract on March 11,1931, under the terms of which plaintiff agreed to construct, what is now known as Boulder Dam, in accordance with a schedule of plans and specifications furnished by the defendant.
Article 3 of the contract permits the defendant, through its contracting officer, to make at any time, by written order, without notice to the sureties, “changes in the drawings and (or) specifications of this contract and within the general scope thereof”, and further provides that “if such changes cause an increase or decrease of the amount due under this contract * * * an equitable adjustment shall be made and the contract shall be modified in writing accordingly.” Pursuant to this provision of the contract various change orders were issued by the contracting officer. The work under the contract proceeded under the original specifications as modified and changed by the respective change orders and was completed by plaintiff and accepted by the defendant. Financial settlement has been had between the plaintiff and the defendant for all work performed by plaintiff under the contract, including the change orders, except for work performed under Change Order No. 10, which was expressly excluded from' ¡the settlement, plaintiff reserving the right to prosecute its claim against the defendant in that respect. There is no controversy between plaintiff and defendant as to the facts, the sole issue being a question of law, i. e., whether or not the work required to be performed by Change Order No. 10 was of such a character as to entitle plaintiff to an equitable adjustment under Article 3 of the contract.
When the original specifications were prepared it was deemed necessary to make provisions for the artificial re *694 moval of heat from the concrete in the dam. Computations indicated that if such provisions were not made, nearly two hundred years would elapse before the mass of concrete would cool to normal temperature through the natural diffusion of heat. The continual shrinkage of volume which would occur during the natural process of cooling would result in cracks and internal strains. Laboratory tests and experiments theretofore made had proved the practicability of artificially cooling concrete by refrigeration. The specifications made provision for the erection and operation by the plaintiff of a refrigeration plant with sufficient capacity to cool the mass of concrete to 72° Fahrenheit. The defendant at the time the specifications were drawn was engaged in the construction of the Owyhee Dam in Oregon. Field tests in the construction of that dam proved that it was practicable to lower the temperature of the concrete more rapidly than was originally planned, thus making it possible to reduce the temperature to meet the temperature of the adjacent medium — that is, cool the concrete to approximately 40° at the upstream face in contact with water at that temperature and 72° at the downstream face in contact with the air. By this means the greatest shrinkage in volume which can ever occur is accomplished within 60 or 90 days, and by filling the joint openings with cement and water under pressure the whole mass becomes monolithic. Further, any increase in temperature of the concrete causes expansion, thus wedging the entire dam tightly together and against the abutments, effectively preventing the formation of cracks and leakage.
In order to accomplish the results demonstrated to be feasible and practicable by the tests made in the construction of the Owyhee Dam, the defendant concedes that it became necessary to order the contractor to make considerable changes in the refrigeration system from that provided for in the original specifications. These changes were provided for in a written change order signed by the contracting officer on October 21, 1933, purporting to act on the authority conferred upon him by Article 3 of the contract. This order for changes was approved by the Secretary of the Interior on November 13, 1933, and was thereafter delivered to the contractor. Under the terms of the original *695 contract and specifications, plaintiff was obligated to install, as part of the refrigeration plant for precooling the concrete in the dam, approximately 800,000 linear feet of two-inch standard pipe with 16,000 fittings which pipe would weigh approximately 2,920,490 pounds at an agreed price of $0,025 per pound. By the terms of the contract and specifications as amended by Change Order No. 10 plaintiff was required to, and did, install, in lieu of the two-inch standard pipe, 3,054,066 linear feet of one-inch outside diameter tubing with approximately 250,000 fittings, which tubing weighed 2,517,753 pounds.
Plaintiff, in the manner and within the time provided for in the contract, presented its claim to the contracting officer for an adjustment on account of the changes ordered and made in the kind of piping required to be installed and the manner of installation of the same. The claim was duly considered by the contracting officer, who decided that, because of the changes made for the installation of cooling pipe, plaintiff was entitled to an equitable adjustment under Article 3 of the contract, and that such equitable adjustment would be an increase in compensation for the installation of the cooling pipe from $0,025 per pound, the amount fixed in the contract and original specifications, to $0.04 per pound. This adjustment in price was stated in writing by the contracting officer, approved in writing by the Secretary of the Interior, and accepted in writing by the plaintiff. The Comptroller General, when the matter was submitted to him, disallowed payment of the increased compensation ($37,766.29) provided in the adjustment made by the contracting officer.
The defendant contends that plaintiff is not entitled to additional compensation for work required of it under the changes provided in Change Order No. 10 because of the provision of paragraph 149 of the original specifications reading:
The pipe spacing, length of pipe, diameter of pipe, and amount of concrete to be cooled may be changed to meet changed conditions which may develop during the progress of the work, and the contractor shall be entitled to no additional allowance above the unit prices bid in the schedule by reason of such changes.
*696 It is apparent from the change order itself that the changes were not made for the reasons which would authorize them under paragraph 149 of the specifications — to meet changed conditions which might develop during the progress of the work. The reason for making the changes is succinctly stated in the change order:
Inasmuch as your contract provides for removing the excess heat above 72° F. in the concrete of the dam by a refrigeration plant, and since entering into the contract, it has been determined to be desirable to cool certain parts of the dam to various temperatures below 72° F., you are directed * * *.
The fact is that the engineers for the Government changed their minds, after the original specifications had been drawn and the contract had been made, as to how and to what temperature the concrete in the dam should be cooled. This change of mind came about because it had been demonstrated in field tests made in the construction of the Owyhee Dam that methods of cooling the concrete in the dam different from those provided in the original specifications were better and preferable. The changes ordered and performed by plaintiff were clearly made for these reasons and not on account of changed conditions developed during the progress of the work. The changes were all made before any of the concrete of the dam had been poured or any of the cooling pipes had been installed. Manifestly, therefore, the changes could not have been made on account of changed conditions developed during the progress of the work and clearly such changes do not come within the provision of Paragraph 149 of the specifications that “the contractor shall be entitled to no additional allowance above the unit prices bid in the schedule by reason of such changes.”
Even if the changes involved had been made to meet changed conditions that developed during the progress of the work, plaintiff would have been obligated to perform the work at the unit prices bid, only to the extent such changes did not materially change the character or cost of the work described in the specifications. The rule is well established that provisions in construction contracts permitting the owner to make changes and alterations without *697 payment of additional compensation refer to reasonable changes only. Salt Lake City v. Smith, 104 Fed. 457; Wood v. Fort Wayne, 119 U. S. 312; Freund v. United States, 260 U. S. 60; Henderson Bridge Company v. McGrath, 134 U. S. 260. As we have seen, the original contract and specifications obligated plaintiff to install approximately 800,000 linear feet of two-inch standard pipe with 16,000 fittings which pipe would weigh approximately 2,920,490 pounds. By the terms of the contract and specifications as amended by the order for changes, plaintiff was required to and did install 3,054,066 linear feet of one-inch pipe with approximately 250,000 fittings which tubing weighed 2,517,753 pounds. Thus it appears that plaintiff was required to install nearly four times as many linear feet of cooling pipe as that originally specified, and more than nine times as many couplings or fittings, which necessarily greatly increased the cost of installation, while at the same time the weight of the pipe installed was reduced by more than 400,000 pounds less than it would have been had the original specifications been followed, thereby reducing the total aggregate payment for installation. These changes were radical in their nature and extent, substantially changing the whole system for the artificial cooling of the concrete of the dam. The changes greatly increased the cost of the work to plaintiff and at the same time greatly reduced plaintiff’s compensation for the work, if paid on the basis of the unit prices bid in the schedule for installation of the cooling pipes. So even if the changes had been made to meet changed conditions that developed during the progress of the work, and they were not, plaintiff could not be required to perform, at the unit prices stated in the contract, work so variant in character and cost from that contemplated when the contract was made, but would be entitled to recover the reasonable value of the work.
The changes here involved were made in writing by the contracting officer under the express authority conferred on him by Article 3 of the contract. The change order was approved in writing by the head of the department, the Secretary of the Interior. Upon application of plaintiff to *698 the contracting officer to make an equitable adjustment of the contract price because of the changes, that officer determined that because of the changes made by order for changes No. 10 plaintiff was entitled to an equitable adjustment under the terms of Article 3, and that such equitable adjustment would be an increase in compensation for the installation of the cooling pipe from $0,025 a pound to $0.04 a pound, or a total of $87,766.29. This adjustment was approved by the Secretary of the Interior and accepted by the plaintiff. Plaintiff has not been paid the amount of the additional compensation due it under this adjustment. Plaintiff is therefore entitled to recover in this suit.
Judgment is awarded plaintiff in the sum of $37,766.29. It is so ordered.
Whalet, Judge; Littleton, Judge; GReen, Judge; and Booth, Chief Justice, concur.